IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LUIS DOMINGUEZ-CRUZ,

    Plaintiff,                           No. CIV S-04-1903 MCE DAD P

    vs.

ROACH, et al.,                            <u>ORDER AND</u>

    Defendants.               <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. In his amended complaint, filed on March 2, 2005, plaintiff contends that since 2002 he has suffered from testicular pain and urinary tract problems, and that defendants Dr. Dial and Dr. Pomazal have provided inadequate medical care for these conditions. Plaintiff acknowledges in his amended complaint that he has received

> numerous clinic visits and lab tests, and several hospital procedures, diagnostic tests and inpatient stays . . .[but] [d]espite these appointment[s] petitioner feels theres [sic] been deliberate indifference from the fact that [MTA] [sic] knew the extent of Petitioner's pain, knew that course of treatment was largely ineffective, and declined to do anything more to attempt to improve Petitioners [sic] condition.

/////

/////

1

(Am. Compl., Court Document No. 6 at 3.)  Plaintiff seeks one million dollars in damages and that "proper medical treatment be administered[.]"  (Id. at 4.)  Before the court is defendants' motion for summary judgment or, in the alternative, motion for summary adjudication.

I.  Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On January 12, 2006, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

II. Defendants' Arguments

Defendants are physicians who treated plaintiff while he was incarcerated at High Desert State Prison (HDSP). They argue that they were not deliberately indifferent or negligent with respect to plaintiff's medical care. In response to defendants' interrogatories, plaintiff clarified that he disputes the medical care he received from February 10, 2003 to October 11, 2004. (Mot. for Summ. J. (MSJ), Decl. of Pass, Ex.s C and D.[1]). Defendant Pomazal provided medical care on two occasions during that period, February 6, 2004 and February 20, 2004. Defendant Dial provided medical care to plaintiff on three occasions during the relevant time period, December 3, 2003, March 11, 2004, and March 26, 2004. Below, the court will set forth a chronology of the medical care provided to plaintiff according to the defendants.

On December 3, 2003[2], plaintiff was seen by defendant Dial with plaintiff reporting that he had experienced kidney and testicular pain for several months, primarily in the lower back or side of the trunk area, and that he was urinating hourly during the day and three times during the night. (Id., Decl. of Dial at 2.) Plaintiff sought medication for his pain. (Id.) Dr. Dial noted that in April of 2003, a 6-8mm stone was discovered in plaintiff's right uretro

---

[1] Court document no. 37-6 at 12 (Response to Dial interrog. #3) and no. 37-6 at 25 (Response to Pomazal interrog. #3).

[2] In his response to defendant Dial's interrogatory number 3, plaintiff contends that defendant Dial violated his constitutional rights on the followings dates: February 10, 2003, March 13, 2003, March 28, 2003, April 22, 2003, June 6, 2003, October 11, 2003, December 18, 2003, March 11, 2004, March 25, 2004, and March 26, 2004.

4

pelvic junction. (Id.) At that time plaintiff had been sent to the Northern Nevada Medical Center (NNMC) in Reno where he underwent a lithotripsy procedure which uses shock waves to pulverize kidney stones so they can pass out of the body with normal urine flow. (Id.) On October 10, 2003, a CT scan was negative for stones, calcification or formation of crystal aggregates in the urinary tract. (Id.) The urologist at NNMC had diagnosed plaintiff as suffering from Epididymitis[3] and had prescribed Cipro and Tylenol. (Id. at 3.) At the time plaintiff was seen by defendant Dial in December of 2003, he was already approved to return to the urologist at NNMC for re-evaluation. (Id.) Upon examination by Dr. Dial, plaintiff did not appear to be in obvious distress and was able to walk unassisted. (Id.) There was no tenderness over his right kidney and no sign of gross lesion in the area of his genitals. (Id.) Dr. Dial prescribed Cipro to continue the therapy prescribed by the urologist at NNMC, pending plaintiff's re-evaluation by the specialist. (Id.)

On February 6, 2004, plaintiff was seen by defendant Pomazal. At that time plaintiff complained of pain in the right lower quadrant of his abdomen radiating into his testicle and increasing with urination. (MSJ, Decl. of Pomazal at 2.) Plaintiff already had a comprehensive urology work-up and had been prescribed Ibuprofen for pain. (Id.) Dr. Pomazal ordered a urine analysis to better determine what was causing plaintiff's pain, continued plaintiff on Ibuprofen and advised him to return to the clinic if he experienced increased pain. (Id.) Dr. Pomazal asserts that Ibuprofen was appropriate because it is effective in treating pain resulting from elevated uric acid levels and plaintiff had never demonstrated any allergy to the medication. (Id.)

On February 20, 2004, plaintiff was seen again by Dr. Pomazal for an interview and examination in order to respond to plaintiff's inmate appeal regarding his ongoing

---

[3] Epididymitis is the inflamation of the epididymis, the "long, narrow, convoluted tube in the spermatic duct system that lies on the posterior aspect of each testicle and connects with the vas deferens." Stedman's Medical Dictionary at 272 (1995).

abdominal/testicular pain. (Id. at 3.) Dr. Pomazal reviewed the results of the urine analysis which he had previously ordered and it showed an abnormally elevated urate level indicating the probable presence of uric acid crystals in plaintiff's urine. (Id.) Defendant's assessment was gout-dysuria, secondary to uricemia. (Id.) Dr. Pomazal explained that:

> Gout is a disease where uric acid is elevated in the blood causing pain and inflamation at body joints due to uric acid crystal deposits. Dysuria is painful or difficult urination. Uricemia indicates plaintiff's elevated uric acid level.

(Id.) Defendant Pomazal then prescribed Colchicine, an anti-inflammatory for the gout and Allopurinol to inhibit the body's ability to produce uric acid. (Id.) Plaintiff was advised to increase his water consumption, and to avoid protein, meat, milk and dairy products and red wine. (Id.) A Spanish language interpreter was used to ensure that plaintiff understood Dr. Pomazal's instructions. (Id.)

On March 11, 2004, plaintiff was seen again by Dr. Dial for renewal of his Colchicine prescription and for the right flank pain which was radiating to plaintiff's right testicle. (MSJ, Dial Decl. at 3.) Plaintiff did not appear to be in any distress and his abdomen was not tender. (Id.) Dr. Dial determined that further tests were needed to rule out recurrent kidney stones. (Id.) Accordingly, he ordered the following series of lab tests: CBC (Complete Blood Count), urine analysis, urine culture and sensitivity, comprehensive chem panel and x-ray. (Id.) Dr. Dial provided plaintiff a new 90-day prescription for Colchicine which prevents or relieves gout attacks by reducing inflammation, and a prescription for Alopurinol, which reduces excess uric acid in the blood. (Id. at 4.) He also informed plaintiff both of how to take these medications and their purposes. (Id.)

On March 26, 2004, plaintiff was complaining of pain in the right flank radiating to his right groin and difficulty with urination and was seen once again by Dr. Dial. (Id.) Plaintiff reported that he was not in severe pain and, upon examination, Dr. Dial found plaintiff's abdomen was non-tender. (Id.) At that time, the doctor was still awaiting the results of the blood

and urine tests to determine if plaintiff was suffering a recurrence of kidney stones. (Id.) Dr. Dial ordered another 90 day refill of the Colchicine prescription for plaintiff. (Id.)

Based on this record, defendants Dr. Dial and Dr. Pomazal argue that there is no evidence that they were deliberately indifferent to plaintiff's urinary problems and testicular pain. (MSJ at 12, 14.) They also argue that there is no evidence before the court that their medical treatment harmed plaintiff in any way or that the treatment provided was unreasonable under the circumstances. (Id. at 12-14.) As to plaintiff's negligence claim, defendants argue that at all relevant times they rendered reasonable and necessary care which was consistent with community standards. (Id. at 16.)

III. Plaintiff's Opposition

On April 3, 2007, plaintiff filed a document styled, "Declaration Of Louis Dominguez-Cruz, In Support Of Plaintiff Motion For Summary Judgment; Plaintiffs Notice Of Motion; Motion For Summary Judgment Or, In The Alternative Summary Adjudication Of Issues, With Memorandum Of Points And Authorities In Support Thereof." (hereafter, "Opp'n") The court has construed this document as plaintiff's opposition to defendants' motion for summary judgment.

Plaintiff contends that Dr. Pomazal failed to properly diagnose his condition and instead made assumptions not based on facts. (Opp'n at 3.) Plaintiff contends that Dr. Dial also failed to make a proper diagnosis of his condition and that this caused plaintiff to "suffer through the days and nights of pain due to the misdiagnosising [sic] of symptoms." (Id.) Plaintiff argues that the defendants' deliberate indifference "come from all the attempts to find relief for his pain and in reture [sic] was given misdiagnosising [sic]." (Id.) Plaintiff asserts that rather than considering and relying upon the results of the medical test he was administered, defendants "acted on their own individual medical opinion's [sic]." (Id. at 4.) With respect to his negligence claim, plaintiff argues that the defendants were negligent because he sought medical care on numerous occasions but the diagnosis and treatment provided by Drs. Pomazal and Dial

7

did not provide him any relief from the pain he was suffering. (Id. at 5.) In short, plaintiff argues that although the defendants examined him, ordered diagnostic testing and prescribed medication, they never properly diagnosed his condition and left him to suffer from the pain in light of the ineffective nature of the treatment.[4]

The court has also reviewed plaintiff's document styled, "Statement Of Undisputed And Disputed Facts" which includes a declaration by plaintiff. Plaintiff provides similar arguments as in the above document.

IV. Legal Standard Governing Plaintiff's Eighth Amendment Claim of Inadequate Medical Care

The Ninth Circuit has described the legal standard for an Eighth Amendment medical care claim as follows:

> Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). In the Ninth Circuit, the test for deliberate indifference consists of two parts. McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. at 1059 (citing Estelle, 429 U.S. at 104, 97 S. Ct. 285). Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. Id. at 1060. This second prong - defendant's response to the need was deliberately indifferent - is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id. Indifference "may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. at 1059 (quoting Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988). Yet, an "inadvertent [or negligent] failure to provide adequate medical care" alone does not state a claim under § 1983. Id. (citing Estelle, 429 U.S. at 105, 97 S. Ct. 285). A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. Id. at 1060. If

---

[4] The parties do not address if or how plaintiff's condition improved. Plaintiff merely argues that he continued to suffer pain through March of 2004.

> the harm is an "isolated exception" to the defendant's "overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference." Id. (citations omitted).

Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

V. Analysis

The court finds that plaintiff has failed to raise a genuine issue of material fact as to whether defendants, Drs. Pomazal and Dial, acted with deliberate indifference to his serious medical needs. The evidence presented by the defendants establishes that they did not "purposefully ignore or fail to respond to [plaintiff's] pain or possible medical needs." McGuckin, 974 F.2d at 1060. Rather, in response to plaintiff's complaints of abdominal and testicular pain, Dr. Pomazal ordered a urine analysis on February 6, 2004, in an attempt to determine the cause of plaintiff's pain and prescribed Ibuprofen for pain relief. Fourteen days later, Dr. Pomazal met with plaintiff in response to plaintiff's inmate appeal. Defendant Pomazal explained the results of the urine analysis which showed elevated urate levels, and based on those test results, prescribed medication to treat plaintiff for gout-dysuria, secondary to uricemia. He also provided plaintiff with additional instructions as to how to further mitigate his elevated uric acid level.

When defendant Dial saw plaintiff on December 3, 2003, he reviewed plaintiff's medical history and noted that plaintiff had already been approved to return to the urologist at NNMC for re-evaluation. Defendant Dial continued the medication previously prescribed by the urologist. At subsequent medical appointments, Dr. Dial ordered that plaintiff be administered a series of lab tests and continued plaintiff's pain medication.

Plaintiff merely argues that the defendants mis-diagnosed his symptoms and were negligent in their treatment of him. However, plaintiff has provided no evidence in support of this claim. The court is aware that on summary judgment it is not to weigh the evidence or determine the truth of the matters asserted but must only determine whether there is a genuine issue appropriately resolved by trial. Summers v. A. Teichert & Son. Inc., 127 F.3d 1150, 1152

(9th Cir. 1997). Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for plaintiff in order to defeat defendants' summary judgment motion. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Here, since there is no evidence to dispute the evidence submitted by defendants which establishes that they were responsive to plaintiff's medical condition and were not deliberately indifferent to his care, plaintiff has failed to establish the existence of an essential element of his Eighth Amendment claim. Therefore, the court will recommend that defendants' motion for summary judgment be granted.

Finally, in his amended complaint, plaintiff alleges that defendants "examined Petitioner [sic] on numerous occasion. [D]espite these examination, both doctors were negligent [sic] in their practice." (Am. Compl. at 2.) Allegations of mere negligence in providing medical care to prisoners does not support an Eighth Amendment claim. See Wilson v. Seiter, 501 U.S. 294, 299 (1991). Rather, deliberate indifference requires "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer v. Brennan, 511 U.S. 825, 835 (1994) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).

The district court may decline to exercise supplemental jurisdiction over a claim "if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). See also Binder v. Gillespie, 184 F.3d 1059, 1066 (9th Cir. 1999), cert. denied, 528 U.S. 1154 (2000) (citing Fang v. United States, 140 F.3d 1238, 1241 (9th Cir. 1998) and Voight v. Savell, 70 F.3d 1552, 1565 (9th Cir. 1995)). If the findings and recommendations are adopted, the federal claim over which this court has original jurisdiction will be dismissed and the balance of relevant factors points toward declining to exercise jurisdiction over any remaining state law claims. See Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994); Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1309 (9th Cir. 1992). To the extent that plaintiff is asserting negligence under state law, this court should decline to exercise

supplemental jurisdiction over that remaining claim.  Therefore, the court will also recommends that plaintiff's state law claim be dismissed without prejudice to its refiling in state court should plaintiff wish to pursue a negligence or malpractice claim.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that the court deems plaintiff's April 3, 2007 Declaration in Support of Plaintiff's Motion for Summary Judgment, as plaintiff's opposition to defendants' March 8, 2007 motion for summary judgment or in the alternative summary adjudication of the issues.

Also, IT IS HEREBY RECOMMENDED that:

1. Defendants' March 8, 2007 motion for summary judgment be granted; and

2. This action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 12, 2007.

/s/ Dale A. Drozd

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:4
domi1903.sj